EXHIBIT C

# UNION BANK OF CALIFORNIA

# LONG TERM DISABILITY BENEFIT

# PLAN DOCUMENT

## Amended and Restated

Effective:

January 1, 1997

## PROPOSED RESOLUTION
## ADOPTING AMENDED AND RESTATED
## UNION BANK OF CALIFORNIA LONG TERM DISABILITY PLAN

WHEREAS, Union Bank adopted a Long Term Disability Plan, effective April 1, 1995 as amended and restated, for the benefit of eligible employees of Union Bank; and

WHEREAS, Union Bank of California has authority to amend the Plan under Article VIII; and

WHEREAS, Union Bank of California desires to amend and restate the Plan,

BE IT THEREFORE RESOLVED, that, effective January 1, 1997, the Union Bank of California Long Term Disability Plan, as amended and restated is hereby adopted, as an amendment in full and complete restatement of the Plan in substantially the form of the document attached hereto and incorporated herein by reference; and

RESOLVED FURTHER, that, effective January 1, 1999, Amendment Number One is hereby adopted in substantially the form of the document attached hereto and incorporated herein by reference; and

RESOLVED FURTHER, that the Director of Human Resources is hereby authorized and directed to execute the Plan Document and that the appropriate officers of the Bank are authorized and directed to prepare and file all documents necessary to obtain Internal Revenue Service approval of the plan document, make whatever changes the Internal Revenue Service may require, and take whatever additional actions may be reasonably required to effectuate the intent of this resolution.

I certify that the foregoing resolution adopting the Union Bank of California Long Term Disability Plan, effective January 1, 1997, and Amendment One to the Plan, effective January 1, 1999, was adopted by the Executive Compensation and Benefits Committee of the Board of Directors of Union Bank of California at the Regular Meeting of said Committee held on _September 23/98_

I further certify that the foregoing resolution now stands on the records of the books of the Corporation and has not been modified, repealed, or set aside in any manner whatsoever and is now in full force and effect.

Dated: _October 13, 1998_


_Jim Bowe_
Jim Bowe, Committee Secretary

# TABLE OF CONTENTS

PAGE

ESTABLISHMENT AND PURPOSE ............................................................................. 1

ARTICLE I    DEFINITIONS ................................................................................... 2

1.1    Actively at Work ............................................................................................. 2

1.2    Administrative Committee .............................................................................. 3

1.3    Applicable Law ............................................................................................... 3

1.4    Benefit Payment Period .................................................................................. 3

1.5    Benefit Waiting Period ................................................................................... 3

1.6    Board of Directors or Board ........................................................................... 4

1.7    Claim Administrator ....................................................................................... 4

1.8    Code ................................................................................................................ 4

1.9    Company .......................................................................................................... 4

1.10   Controlled Group ............................................................................................ 5

1.11   Covered Monthly Earnings ............................................................................. 5

1.12   Directors Executive Compensation and Benefits Committee (the
       Directors' Committee) ..................................................................................... 5

1.13   Doctor ............................................................................................................. 5

1.14   Effective Date ................................................................................................. 6

1.15   Eligible Employee ........................................................................................... 6

1.16   ERISA ............................................................................................................. 6

1.17   Hospital ........................................................................................................... 6

1.18   Mental or Nervous Disorder ........................................................................... 7

1.19   Monthly Benefit Amount ................................................................................ 7

1.20   Monthly Earnings ........................................................................................... 7

1.21   Participant ....................................................................................................... 8

1.22   Plan .................................................................................................................. 8

1.23   Plan Administrator .......................................................................................... 8

| 1 24 | Plan Year | 8 |
|---|---|---|
| 1 25 | Substance Abuse | 9 |
| 1 26 | Total Disability or Totally Disabled | 9 |
| 1 27 | Trust | 9 |
| 1 28 | Trust Agreement | 10 |
| 1 29 | Trustee | 10 |
| ARTICLE II | PLAN PARTICIPATION | 11 |
| 2 1 | Eligibility | 11 |
| 2 2 | Participation | 11 |
| 2 3 | Termination of Participation | 11 |
| 2 4 | Re-employment and Requalification | 12 |
| ARTICLE III | LONG TERM DISABILITY BENEFITS | 13 |
| 3 1 | Coverage | 13 |
| 3 2 | Benefit Waiting Period | 13 |
| 3 3 | Monthly Benefit Amount | 14 |
| 3 4 | Benefits From Other Sources - Explained | 14 |
| 3 5 | Benefits From Other Sources - Listed | 16 |
| 3 6 | Benefit Payment Period | 18 |
| 3 7 | Rehabilitative Employment | 21 |
| 3 8 | Period of Disability | 23 |
| 3 9 | Pre-existing Conditions | 24 |
| 3 10 | Exclusions | 25 |
| ARTICLE IV | PAYMENT OF BENEFITS | 26 |
| 4 1 | Application for Benefits | 26 |
| 4 2 | Medical Examinations | 26 |
| 4 3 | Acts of Third Parties | 27 |
| 4 4 | Non-Alienation of Benefits | 28 |
| 4 5 | Facility of Payment | 29 |

ARTICLE V      CLAIMS AND REVIEW PROCEDURES ........................ 31
   5.1      Claims Procedure ......................................................... 31
   5.2      Claims Review Procedure ........................................... 33

ARTICLE VI     ADMINISTRATION OF THE PLAN ........................... 35
   6.1      Appointment of The Committee ................................. 35
   6.2      The Committee ............................................................ 35
   6.3      Delegation of Administrative Powers ........................ 37
   6.4      Indemnification ............................................................ 37

ARTICLE VII    PLAN FINANCING ................................................... 39
   7.1      Company Contributions ............................................... 39
   7.2      Trust .............................................................................. 39
   7.3      Amendment of Trust Agreement ................................ 39
   7.4      Right to Insure ............................................................. 40

ARTICLE VIII   AMENDMENT AND TERMINATION ...................... 41
   8.1      Amendment ................................................................... 41
   8.2      Termination ................................................................... 41
   8.3      Applicable Law ............................................................. 41

ARTICLE IX     GENERAL PROVISIONS .......................................... 42
   9.1      No Limitation of Management Rights ........................ 42
   9.2      Participant's Responsibilities ...................................... 42
   9.3      Missing Persons ........................................................... 43
   9.4      Governing Law ............................................................. 43

ARTICLE X      OFFICIAL DOCUMENT ........................................... 44

ADOPTION OF THE PLAN .............................................................. 45

## ESTABLISHMENT AND PURPOSE

Effective January 1, 1997, Union Bank of California, N.A. ("Company") has amended and restated the Union Bank Long Term Disability Benefit Plan to become the Union Bank of California Long Term Disability Plan ("Plan"), as set forth herein, to extend benefits to former eligible employees of the Bank of California.

The Plan is maintained for the exclusive benefit of Eligible Employees. In addition, the terms of the Plan may be legally enforced by those employees.

The Plan, as amended and restated effective January 1, 1997, is intended, together with its related Trust Agreement, to constitute a voluntary employees' beneficiary association (VEBA), exempt from federal income taxation, within the meaning of Section 501(c)(9) of the Internal Revenue Code of 1986 ("Code"). Further, it is designed to meet the appropriate requirements of any other Applicable Law.

Except as otherwise stated in the Plan, the provisions of the Plan, as amended and restated, shall not apply to disability benefits payable to or on account of an employee who became disabled prior to January 1, 1997. The rights and benefits, if any, of such an employee shall be determined in accordance with the provisions of the plan in effect on the date the employee became disabled.

ARTICLE 1

DEFINITIONS

The following words and phrases, when used in this Plan with an initial capital letter have the following meanings, unless the context clearly indicates otherwise. For purposes of the Plan, where the context permits, the masculine includes the feminine, the plural includes the singular, and the singular includes the plural.

1.1     Actively at Work

An employee is considered "Actively at Work" when both (a) and (b) below are met:

(a)     The employee is either

(1)     performing all of the regular duties of his job on a scheduled work day at the Company's place of business; or

(2)     at work at a place to which he must travel to perform the regular duties of his job.

(b)     The employee is either

(1)     at work for the full day; or

(2)     absent from work for 1 day or less, other than for health reasons, and it is with the Company's consent, or

(3)    at work on a day that is not his scheduled work day, but only if he was Actively at Work on his last scheduled work day before that day.

If an employee leaves work during a scheduled work day or is absent from work at any time for health reasons, he will not be considered as Actively at Work.

1.2    Administrative Committee

The Employee Deferred Compensation and Benefit Plan Administrative Committee appointed by the Company, which has been named to exercise the duties and responsibilities of Plan Administrator delegated to it under Article VI.

1.3    Applicable Law

The Code or ERISA, as herein defined, or any other law of the United States or any state or political subdivision thereof which may apply to this Plan.

1.4    Benefit Payment Period

The period during which monthly benefits are payable under the Plan due to Total Disability resulting from sickness or an accidental injury.

1.5    Benefit Waiting Period

The twelve-month period during which the Participant must be Totally Disabled before monthly benefits can begin.

1.6    Board of Directors or Board

The Board of Directors of Union Bank of California, N.A.

1.7    Claim Administrator

The insurance company, service company or other entity, which regularly engages in the business of providing claims administration, adjustment and payment, and claims review services to employee welfare benefit plans, to which the Committee has delegated such services.

1.8    Code

The Internal Revenue Code of 1986, as amended, as it now exists or from time to time may be amended.

1.9    Company

Union Bank of California, N.A. a California banking corporation (formed through a merger of Union Bank and The Bank of California).    The "Company" includes any other company which is a member of the same Controlled Group as the Company, which the Board of Directors has authorized to adopt this Plan, and which by action of its directors has adopted the Plan, and any successors of such entities.    All entities which were adopting employers under a predecessor plan and which are members of the same Controlled Group as the Company shall be employers without any corporate action required except as may be specifically required by the Board of Directors of the Company.

1.10   Controlled Group

Any two or more corporations, trades or businesses of which any Company is a member which constitute a controlled group or an affiliated service group, or are under common control within the meaning of Code Section 414(b), (c), or (m), but only for the period during which such relationship exists.

1.11   Covered Monthly Earnings

A Participant's Monthly Earnings, up to the Plan's stated maximum amount, which may be used to determine the eligible monthly benefit. Any change in the amount of Covered Monthly Earnings will become effective on the date the Participant's monthly Earnings change. But, if on the date of an increase the Participant is not Actively at Work, his Covered Monthly Earnings will increase on the date he returns to active full-time work.

1.12   Directors Executive Compensation and Benefits Committee (the Directors Committee)

The Committee of the Board of Directors designated by the Board of Directors pursuant to Article 6.1 to be responsible for the general supervision over the administration and policies of the Plan.

1.13   Doctor

A person who is duly licensed to practice the healing arts, is licensed under the laws of the proper governmental authority, is licensed to perform the services and procedures required to care for and to treat bodily injury or sickness, and is not related to the Participant by blood or marriage.

1.15    Eligible Employee

An employee of the Company who meets the conditions for eligibility in the Plan, as stated in Section 2.1.

1.16    ERISA

The Employee Retirement Income Security Act of 1974, Public Law No. 93-406, as amended from time to time.

1.17    Hospital

An institution that meets all of the following requirements in full:

(a)    It is a place that is organized mainly to provide facilities for the surgical and medical diagnosis, care and treatment of injured or sick persons. In addition it may also be a place that provides facilities for the care and treatment of mentally ill persons.

(b)    It furnishes care and treatment supervised by doctors who hold a legal license to practice medicine.

(c)    It provides regular and continual day and night nursing services, run by or supervised by registered nurses.

(d)    It is run under the laws of the jurisdiction in which it is located.

(e)    It is not mainly: a place of rest, a place for the aged, or a nursing or a convalescent home.

1.18    Mental or Nervous Disorder

A psychological, behavioral, or emotional disorder, regardless of cause or origin, including physical symptoms of such disorders. Such conditions include, but are not limited to: stress disorders or ailments, bipolar affective disorder (manic depressive syndrome), schizophrenia, delusional (paranoid) disorders, psychotic disorders, depressive disorders, anxiety disorders, somatoform disorders (psychosomatic illness), eating disorders, and mental illness.

The following types of illnesses are excluded from this definition: Alzheimer's disease, multiple sclerosis, amyotrophic lateral sclerosis, traumatic brain injuries, and demonstrable structural brain damage.

1.19    Monthly Benefit Amount

The monthly disability benefit payment as determined in Section 3.3 of the Plan.

1.20    Monthly Earnings

The Participant's regular base salary or wages received for services rendered to the Company. "Monthly Earnings" also includes amounts deferred pursuant to Code Section 125, 401(k), 402(a)(8), 402(h) or 403(b) which if paid, would have been Monthly Earnings. "Earnings" excludes (without

limitation) commissions, overtime, bonuses, premium payments, restricted stock awards, bargain element on stock options, special amounts or payments and indemnities. If all or part of a Participant's base pay is based on the number of hours worked, then the monthly rate of base pay will be based on the number of hours in the scheduled work week. But, no more than 40 hours of base pay can be included for each week.

1.21    Participant

An Eligible Employee who is covered under the Plan pursuant to Sections 2.1 and 2.2.

1.22    Plan

The Union Bank of California Long Term Disability Benefit Plan, the terms of which are set forth herein, as may be amended from time to time.

1.23    Plan Administrator

The Administrative Committee, which may delegate responsibilities and duties pursuant to Article VI.

1.24    Plan Year

The fiscal year of Union Bank of California which, at present, ends on December 31st of each year.

8:\WP\clb\clb-152.doc    7/98

1.25    Substance Abuse

Alcohol or drug abuse or chemical dependency, including but not limited to the taking of a prescription or controlled drug in a manner not prescribed or recommended by a physician. Substance Abuse may also include a condition which is the result of taking prescribed or controlled medications under the direction of a physician.

1.26    Total Disability or Totally Disabled

The terms "Total Disability" or "Totally Disabled" mean that the Participant is unable by reason of an accidental bodily injury, a sickness or a pregnancy,

(a)    during the first thirty-six (36) months, to perform the material duties of his job, and

(b)    after the first thirty-six (36) months, to work at any job (for pay or profit) for which he is qualified by education, training, or experience.

For purposes of the foregoing, the thirty-six (36) month period includes the Benefit Waiting Period.

1.27    Trust

The Union Bank of California Employee Welfare Plans Trust (VEBA) established by the Company in part to fund the Plan.

The agreement executed by the Company and the Trustee establishing the Trust, as amended from time to time.

1.29    Trustee

The Trustee under the Trust Agreement as appointed by the Company in accordance with Section 6.2(f).

ARTICLE II

PLAN PARTICIPATION

Employees of the Company shall become eligible to participate in the Plan at such time and under such conditions described in this Article II.

2.1    Eligibility

An Eligible Employee is a person who, on or after the effective date of the Plan,

(a)    is a regular employee of the Company;

(b)    is regularly scheduled to work at least 17-1/2 hours weekly; and

(c)    is not a Peak-Time Teller, On-Call Teller or Staff on Standby.

2.2    Participation

An Eligible Employee shall automatically become a Participant on the date following completion of two (2) months of continuous employment.

2.3    Termination of Participation

An Eligible Employee shall cease to participate in this Plan on the earliest of the following dates:

(a)    The date on which the Participant's employment terminates, or he is no longer an Eligible Employee as defined in Section 2.1 above for any reason other than his disability.

    (b)    The effective date of an amendment to this Plan which terminates the eligible class of employees of which the Participant is a member.

    (c)    The date upon which this Plan terminates.

2.4    <u>Re-employment and Requalification</u>

If an employee shall again become an Eligible Employee following cessation of participation in the Plan, participation shall again begin in accordance with Section 2.2 above.

ARTICLE III

LONG TERM DISABILITY BENEFITS

3.1    Coverage

The Plan will pay disability income benefits in accordance with the terms set forth below, if a Participant becomes Totally Disabled and is under the regular care and treatment of a Doctor for the condition which caused Total Disability.  Disability may be due to:

(a)    an accidental bodily injury,

(b)    an illness, including illness arising out of a pregnancy, or

(c)    a Mental or Nervous Disorder.

3.2    Benefit Waiting Period

After Total Disability has been established for the duration of the Benefit Waiting Period, and after acceptable proof of disability has been submitted to the Claim Administrator, disability benefit payments will begin.

3.3   Monthly Benefit Amount

    (a)    Benefit Formula:

        66⅔% of Covered Monthly Earnings up to a Maximum Monthly Benefit Amount of $8,333.75, reduced by the total amount of benefits payable from all other sources (Sections 3.4 and 3.5).

    (b)    Steps for Calculating Benefit Amount:

        (1)    Determine Monthly Earnings as in effect on the day before the date of each Period of Disability.

        (2)    Determine Covered Monthly Earnings which is equal to Monthly Earnings, but not more than $12,500.

        (3)    Apply the benefit formula to determine the Participant's Monthly Benefit Amount, up to a maximum of $8,333.75.

        (4)    Reduce the Monthly Benefit Amount by benefit amounts paid or payable from other sources which are explained and listed in Sections 3.4 and 3.5 below.  However, the Monthly Benefit Amount shall not be less than the minimum benefit of $50.

3.4   Benefits From Other Sources - Explained

    (a)    The Benefits From Other Sources are listed in Section 3.5 below.  The amount payable to a Participant under any of these sources is the total amount that is or will be or could be paid on or after the date the Benefit Payment Period begins.  It also includes any amount that will

be or could be paid but is not because the Participant did not apply for it or did not apply for it properly or on time. And, it includes any payment made from any of these sources that takes effect any time during the Benefit Payment Period. It does not include any amount the Participant is receiving from these sources before the date Total Disability begins.

The Plan will estimate any amount that will be or could be paid from these sources. When the actual amount paid to the Participant is known, that estimate will be changed to the actual amount. The Plan will then adjust any monthly benefit amount to reflect the actual amount.

(b)    Once the Monthly Benefit Amount is reduced by an amount that is being paid from any of these sources, the Plan will not further reduce the Monthly Benefit Amount by any cost of living increases made to that amount being paid from that source.

(c)    When any amount paid from these sources is paid in one lump sum, the Plan will reduce the Monthly Benefit Amount by that lump sum, but not all at once. How the Plan reduces the Monthly Benefit Amount depends on whether the lump sum amount is based on a specific period of time or not.

If it is based on a specific period of time, the Plan will reduce the Monthly Benefit Amount each month by an amount that is equal to what would have been paid each month had the Participant not been paid in one lump sum.

If it is not based on a specific period of time, the Plan will divide the lump sum by the lesser of 60 months or the number of months the Monthly Benefit Amount is expected to be paid. It will then reduce the Monthly Benefit Amount each month for up to 60 months by that result.

In any case, the total amount of reduction will not be more than the total amount of the lump sum paid to the Participant.

(d)     If the Participant later receives payment from any of these sources for a period of disability for which the Plan has begun to pay a Monthly Benefit Amount, the Participant must repay the Plan. The amount to be repaid is the difference between:

(1)     the total Monthly Benefit Amount paid by the Plan; and

(2)     the total Monthly Benefit Amount the Plan would have paid if the Monthly Benefit Amount had been reduced by payments received from these sources.

3.5    <u>Benefits From Other Sources - Listed</u>

(a)     Disability Income Benefit Amount Arranged By Or Through The Company:

This is the amount payable to the Participants under any group insurance program arranged by or through the Company.

16

(b)     Workers' Compensation Law, Unemployment Compensation Law, Railroad Retirement Act, or State Disability Income Laws:    This includes the benefit or income payable to the Participant by reason of the Participant's disability, including without limitation, payments attributable to temporary disability, permanent disability, permanent/ partial disability, vocational rehabilitation payments, rehabilitation maintenance allowance payments, compromise and release settlements and lump-sum settlements, but excluding medical expenses incurred prior to the award.

(c)     Retirement Plan Disability Income Benefit Amount

This is the amount payable to the Participant on account of disability, under a retirement plan for which the Company pays all or part of the cost or takes money out of the Participant's pay.  It does not include any amount that the Participant does not choose to receive if by choosing to receive it his accrued or future pension benefits would be reduced.

(d)     Social Security Retirement, Railroad Retirement Act, or Other Retirement Or Profit Sharing Retirement Benefit Amount:

This is the amount payable to the Participant under these and any other similar laws or acts.  It is also the amount payable under a retirement program for which the Company pays all or part of the cost, or it is the amount payable under a profit sharing retirement program for which the Company pays all or part of the cost if there is no other retirement program for which the Company pays all or part of the cost.  It does not include any amount that the Participant does

not choose to receive if by choosing to receive it his accrued or future retirement benefits would be reduced.

(e)    Federal Social Security Disability Income Benefit Amount:

This is the amount payable under Federal Social Security or Supplemental Security Income to the Participant and his dependents because of the Participant's disability.

3.6    Benefit Payment Period

(a)    While the Participant remains Totally Disabled his Monthly Benefit Amount shall be paid in accordance with the following payment period.  Payment begins on the last day of the month following the date the Benefit Waiting Period ends.

(1)    Total Disability Due to Injury or Sickness

| Age at Disablement | Payment Period |
|---|---|
| Less than age 62 | To age 65 |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 or over | 12 months |

(2)    <u>Total Disability Due to Mental or Nervous Disorders</u>

    (A)    Except as provided under subsection (B) below, whether or not the Participant is confined to a Hospital, the Plan will pay benefits for up to 24 months while he is Totally Disabled due to a Mental or Nervous Disorder.

    (B)    If the Participant is confined to a Hospital on the date the 24-month period ends, payment continues during the remaining period of confinement for up to an additional 90 days.

    (C)    In any event, payments will not be made beyond the date on which the Benefit Payment Period in Section 3.6(a)(1) would otherwise end.

    (D)    The 24-month maximum is a lifetime maximum which applies to all periods of disability due to a Mental or Nervous Disorder.

(3)    <u>Total Disability Due to Substance Abuse</u>

    (A)    Except as provided under subsection (B) below, whether or not the Participant is confined to a Hospital, the Plan will pay benefits for up to 24 months while he is Totally Disabled due to Substance Abuse, but only if the Participant is actively participating in a treatment program which has been approved by the Claim Administrator.

     (B)    If the Participant is confined to a Hospital on the date the 24-month period ends, payment continues during the remaining period of confinement, as long as the Participant is actively participating in a treatment program which has been approved by the Claim Administrator, for up to an additional 90 days.

     (C)    For purposes of subsections (a)(3)(A) and (B), a "treatment program" shall mean a medically supervised program designed specifically for the treatment of Substance Abuse that is approved by the Claim Administrator.

     (D)    In any event, payments will not be made beyond the date on which the Benefit Payment Period in Section 3.6(a)(1) would otherwise end.

     (E)    The 24-month maximum is a lifetime maximum which applies to all periods of disability due to Substance Abuse.

(b)    The benefit is payable each month. However, if the Participant's Total Disability ends with less than one full month left to be paid, a daily amount will be paid for each day remaining. The daily amount is 1/30 of the Monthly Benefit Amount.

(c)    Monthly benefit payments will automatically cease on the earliest of the following dates:

(1)    The date the Participant is no longer Totally Disabled.

(2)    The date the Participant's Benefit Payment Period ends.

(3)    The date the Participant dies.

(4)    The date following 24 months of benefit payments in the event that the Participant does not qualify for Social Security disability benefits.

However, payments will continue if the Claim Administrator determines that the Participant meets the medical criteria for Social Security disability benefits, but has been denied benefits solely because he does not have adequate quarters of coverage to qualify for Social Security disability benefits.

3.7    Rehabilitative Employment

The purpose of this Rehabilitative Employment benefit is to encourage a Plan Participant who continues to meet the definition of Total Disability, as provided in Section 1.26, to try to return to work without penalty.  If a Participant is Totally Disabled, he may be able to return to work with prior approval from the Claim Administrator and continue to receive a monthly benefit payment.

This employment, if approved, will be considered "rehabilitative." It may be with any employer and in any occupation for which the employee is reasonably qualified. The Claim Administrator has the discretion to re-evaluate the Participant's condition and the appropriateness of reemployment at least once every six months.

The Participant's Monthly Benefit Amount will be reduced by 50% of the earnings received from rehabilitative employment. Payment under this Rehabilitative Employment will continue while the Participant is employed but not beyond the earliest of:

(a)    the date after which eighteen months of benefits have been paid pursuant to this rehabilitative employment provision,

(b)    the date the Participant is no longer working in rehabilitative employment, or

(c)    the date the Participant's Benefit Payment Period ends.

The termination of payments under this Section 3.7 does not necessarily preclude other benefits under the Plan.

Total monthly income from rehabilitative employment and benefit payments under the Plan may not exceed the Participant's Covered Monthly Earnings, as defined in Section 1.11, prior to disability.

3.8    Period of Disability

Each period of Total Disability begins on the first day that the Participant is Totally Disabled. He must be under the regular care and treatment of a Doctor for that injury or that illness which caused Total Disability.

The Plan pays for only one period of disability at a time. Each period that begins while an employee is covered under the Plan is treated either as part of one ongoing period or as a new period.

(a)    An ongoing period of disability occurs when a Participant:

(1)    is Totally Disabled by one or more causes for the entire Benefit Waiting Period; or

(2)    is Totally Disabled for only part of the Benefit Waiting Period, returns to active full-time work for less than 30 days, and again becomes Totally Disabled by the same or a related cause. The Benefit Waiting Period resumes as of the date the Participant again becomes Totally Disabled; or

(3)    is Totally Disabled for the entire Benefit Waiting Period or longer, returns to active full-time work for less than 12 months, and again becomes Totally Disabled by the same or a related cause. The Monthly Benefit Payment will begin as of the date the Participant again becomes Totally Disabled.

7/98

(b)  A new period of disability, requiring the completion of a new Benefit Waiting Period, occurs when the Participant:

(1)  is Totally Disabled for only part of the Benefit Waiting Period, returns to active full-time work for 30 days or more, and again becomes Totally Disabled by the same or related cause; or

(2)  is Totally Disabled for the entire Benefit Waiting Period or longer, returns to active full-time work for 12 months or more, and then becomes Totally Disabled again by the same or related cause; or

(3)  is Totally Disabled for only part of the Benefit Waiting Period, returns to active full-time work for 1 full day or more, and again becomes Totally Disabled by an entirely different cause; or

(4)  is Totally Disabled for the entire Benefit Waiting Period or longer, returns to active full-time work for 1 full day or more, and again becomes Totally Disabled but by an entirely different cause

## 3 9   Pre-existing Conditions

If a Participant receives care or treatment for an accidental bodily injury or for an illness within the three (3) month period just prior to the date coverage becomes effective under the Plan, that injury or illness will be considered a pre-existing condition

No benefits are payable under this Plan for a disability arising pursuant to a pre-existing condition, unless the Participant has completed twelve (12) consecutive months of coverage under the Plan prior to the period of disability, as defined in Section 3.8.

3.10   Exclusions

This Plan does not pay benefits for any disability caused by or resulting from:

(a)    war or act of war, whether war is declared or undeclared;

(b)    an injury or illness sustained while in the armed forces of any country, including any governmental body or any international authority;

(c)    Substance Abuse, unless the Participant is in a treatment program approved by the Claim Administrator;

(d)    the commission of a felony;

(e)    an intentionally self-inflicted injury, suicide or attempted suicide, whether sane or insane;

(f)    participation in a riot, rebellion or insurrection.

ARTICLE IV

PAYMENT OF BENEFITS

4.1    Application for Benefits

To be entitled to any Long Term Disability benefits for which a Participant is
otherwise eligible under the Plan, the Participant must be in compliance with
such procedures and requirements as the Claim Administrator may have
prescribed with respect to the completion and filing of an application for
such benefits and submission of evidence that such Participant is entitled to
such benefits.  The Claim Administrator shall require information with respect
to the Participant's age, address, marital status, dependents, employment
record, medical history and evidence that such Participant has applied for
Social Security benefits or other benefits as outlined in Section 3.5.  The
Claim Administrator may require any other information reasonably relevant to
a determination of whether such Participant is eligible to receive disability
benefits and may also require written authorization (i) to obtain information
from all the physicians of a Participant applying for disability benefits, with
respect to such Participant's physical condition, diagnosis, prognosis, date of
expected return to work and related matters, and (ii) to request and receive
relevant medical records on file in any hospital, physician's or government
office and (iii) such other records from any company having information
reasonably relevant to a determination.

4.2    Medical Examinations

Unless otherwise prohibited under state or federal law, the Claim
Administrator may require that a Participant applying for Long Term Disability
benefits submit to an examination by a physician designated by the Claim

Administrator for his medical opinion as to whether such Employee is disabled so as to meet the eligibility requirements under the Plan for Long Term Disability benefits and whether his disability has existed for the requisite elimination period. Re-examinations of a Participant receiving Long Term Disability benefits may be directed by the Claim Administrator from time to time for the purpose of assisting the Claim Administrator in determining whether continued eligibility for such benefits exists. The fees of such physician and the expenses of such examination shall be paid by the Company.

4.3    Acts of Third Parties

In the event that a Participant is injured through the acts or omissions of another person or organization, the Claim Administrator shall provide the benefits of the Plan on condition that the Participant shall agree in writing:

(a)    To reimburse the Plan, for the full amount of payments made under the terms of this Plan, immediately upon receipt of the proceeds of any settlement of, or judgment in, an action at law, arbitration, claim, or other proceeding to determine said Participant's rights of recovery arising out of said injury, net of Participant's reasonable expenses in collecting such amount including reasonable attorney's fees, and net of any amounts which are allocated by terms of any judgment for the payment of unreimbursed medical expenses of the Participant; said Participant shall execute and deliver instruments and papers and do whatever else is necessary to secure the rights of the Plan to reimbursement out of such proceeds; said Participant shall do nothing to prejudice such rights;

(b)     To provide the Claim Administrator with a lien on the proceeds described above, to the extent of the full amount of payments made under the terms of this Plan; said lien may be filed with the person or organization whose act or omission injured the Participant, with his (its) agents, or may be filed with the Court;

(c)     To provide the Claim Administrator with a credit against payments to be made in the future under this Plan, said credit shall be equal to the proceeds above described, less any amount paid to the Plan by the way of reimbursement.

4.4     <u>Non-Alienation of Benefits</u>

Except as provided in Section 4.3, the extent permitted by law, no benefit payable at any time under the Plan shall be assignable or transferable, or subject to any lien, in whole or in part, either directly or by operation of law, or otherwise, including, but not by way of limitation, execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner, and no benefit payable under the Plan shall be liable for, or be subject to, any obligation or liability of any Participant.  If any Participant entitled to a benefit under the Plan shall attempt to or shall alienate, sell, transfer, assign, pledge or otherwise encumber such benefit or any part thereof, or if by reason of his bankruptcy or other event happening at any time, such benefit would devolve upon anyone else or would not be enjoyed by him, then the Claim Administrator in his discretion, which shall be exercised uniformly by treating individuals in similar circumstances alike, may terminate his interest in any such benefit and hold or apply it to or for his benefit or the benefit of his spouse, children or other dependents, or any of them in such manner as the Claim Administrator may deem proper and in accordance with law.  The

7-98

Claim Administrator shall be deemed to have properly exercised its authority unless it has abused its discretion by acting arbitrarily or capriciously.

4.5    Facility of Payment

(a)    If the Participant is unable to give a valid release for a benefit payment under the Plan because of a physical, mental or other reason, the Plan may pay the person or persons who appear to have assumed the custody and main support of the Participant. The Plan may do this until the appointed legal guardian makes a claim.

(b)    In the event that a guardian, conservator, committee or other legal representative has been duly appointed for a Participant entitled to any payment under the Plan, any such payment due may be made to the legal representatives making claim therefor, and any such payment so made shall be in complete discharge of the liabilities of the Plan therefor and the obligations of the Claim Administrator and the Company.

(c)    If the Participant dies before all benefit payments are made, the remaining payments will be made to the executors or the administrators of the Participant's estate. But, if they or anyone else who is to be paid the remaining benefit amount is unable to give valid release for payment, the Plan may pay to one or more of the Participant's living relatives. This would include anyone who is related to the Participant by blood or marriage.

(d)   Once a benefit payment has been made to the Participant or any other person or persons under the terms of the Plan, the Plan shall not be liable to make the same payment again to anyone else.

ARTICLE V

CLAIMS AND REVIEW PROCEDURES

5.1    Claims Procedure

A Claim Administrator shall be appointed by the Company to administer the claims under the Plan. The Claim Administrator shall be solely responsible for the matters for which it is responsible under an administrative service contract, and to the extent regulated by ERISA, shall acknowledge in writing that it is a fiduciary with respect to the Plan.

A Participant who submits a claim for disability benefits shall submit such claim, in writing, to the Claim Administrator or to such other individuals as the Plan Administrator shall designate in writing. Such claims shall be submitted on the form or forms prescribed by the Claim Administrator.

Written notice of claim must be given to the Claim Administrator within nine (9) months after the date of commencement of Total Disability. All proof of disability must be submitted within 120 days after the Benefit Waiting Period ends. Failure to furnish such proof within this time limit shall not be reason for denial of benefits, in whole or in part, if it was not reasonably possible for the Participant to comply. A claim may be submitted by a representative of the Participant if he is not reasonably able to do so.

Thereafter, such Participant shall obtain a statement, in writing, from the attending physician for the illness or injury upon which the Participant's claim for disability benefits is based. Such statement may be submitted directly to the Claim Administrator or his designee by such physician, and shall be on the form or forms prescribed by the Claim Administrator.

Following receipt of a properly completed claim for disability benefits, including a statement from the attending physician and such other information or documentation as the Claim Administrator may reasonably request, the Claim Administrator shall within 90 days after receipt of the completed claim, render a written decision with respect to the disability benefits to which the Participant is entitled, if any.

If the Claim Administrator determines that the Participant is entitled to disability benefits, such written notice shall set forth the amount of the disability benefits to which the Participant is entitled and the method by which the Claim Administrator computed the amount of such benefits.

In the event the Claim Administrator determines that the Participant is not entitled to disability benefits, such written notice shall set forth the specific reasons for such determination, specify the provisions of the Plan upon which the denial is based and describe any additional material or information reasonably necessary for the Participant to qualify for benefits. Such notice shall also set forth the claim review procedure described in Section 5.2.

The Claim Administrator shall have the right to (i) require supplemental forms from the physician or those authorized to certify disabilities as often as deemed necessary, and (ii) have any Participant examined while the Participant is claiming benefits under this Plan, unless otherwise prohibited under state or federal law. This may be done when and as often as may be reasonably required during the period payments may be due under this Plan. (See Section 4.2, "Medical Examinations.") Supplemental forms and/or extensions of disability must be filed within 20 days of the date requested. Failure to do so could result in denial of benefits.

5.2    Claims Review Procedure

In accordance with Section 6.3, the Plan Administrator shall delegate to the Claim Administrator the authority to act with respect to any appeal from a denial of benefits under the Plan, as described in this Section 5.2, except for appeals regarding eligibility for participation in the Plan, which shall be heard by the Plan Administrator.  The Claim Administrator shall be the named fiduciary with respect to the responsibilities as described in this Section.

(a)    Right of Appeal.  Any person whose application for benefits is denied (or is deemed denied) in whole or in part, or such person's duly authorized representative, may appeal such denial by submitting to the Claim Administrator a written request for a review of the application within 60 days after receiving written notice of such denial (or, in the case of a deemed denial, within 60 days after the application is deemed denied).  The Claim Administrator shall give the applicant or such representative (upon request) an opportunity to review pertinent documents (other than legally privileged documents) in preparing the request for a review; provided that a Participant may review medical documents only with the written consent of the Physician(s) who prepared such documents.

(b)    Request for Review.  The request for review must be in writing and shall be addressed to the Claim Administrator.  The request for review shall set forth all of the grounds upon which it is based, all facts in support thereof and any other matters that the applicant deems pertinent.  The Claim Administrator may require the applicant to submit (at the expense of the applicant) such additional facts,

documents or other material as it deems necessary or advisable in making its review.

(c)     Action on Request for Review.  The Claim Administrator shall act on each request for a review within 60 days after receipt thereof, unless special circumstances require an extension of time up to an additional 60 days for processing the request.  If such an extension for review is required, a notice of the extension shall be furnished to the applicant within the initial 60-day period.  The Claim Administrator shall give prompt, written notice of its decision to the applicant.  In the event that the Claim Administrator confirms the denial of the application for benefit in whole or in part, such notice shall set forth, in a manner calculated to be understood by the applicant, the specific reasons for such denial and specific references to the Plan provisions on which the decision is based.  If written notice of the  Claim Administrator's decision is not given to the applicant within the time prescription in this subsection (c), the application shall be deemed denied on review.

(d)     Claim Administrator Rules and Procedures.  The Claim Administrator shall establish such rules and procedures, consistent with the Plan and ERISA, as it may deem necessary or appropriate in carrying out its responsibilities under this Section 5.2.  The Claim Administrator may require an applicant who wishes to submit additional information in connection with an appeal from the denial of benefits, in whole or in part, to do so at the applicant's own expense.

ARTICLE VI

ADMINISTRATION OF THE PLAN

6.1    Appointment of The Committee

The Board of Directors has delegated to the Directors Compensation and Benefits Committee ("Directors Committee") the ultimate authority to oversee the operation of the Plan.    The Directors Committee has delegated responsibility for the administration of the Plan to the Employee Deferred Compensation and Benefit Plan Administrative Committee ("the Administrative Committee") which Administrative Committee shall administer the Plan in accordance with its provisions.

6.2    The Committee

The Administrative Committee shall be the Plan Administrator who shall have the discretionary authority to control and manage the operation of the Plan as named fiduciary.    The Plan Administrator (or any of its delegates) as well as any other Plan fiduciaries shall be deemed to have properly exercised their authority unless they have abused their discretion hereunder by acting arbitrarily or capriciously.

The Administrative Committee as Plan Administrator shall have full power to administer the Plan in all of its details, including, but not limited to, the following powers:

(a)    to make and enforce such rules and regulations as it shall deem necessary and proper for the efficient administration of the Plan;

(b)  to interpret the Plan, its good faith interpretation to be final and conclusive on all employees and Participants (or beneficiaries);

(c)  to decide all questions concerning the Plan and eligibility of any person to participate in the Plan;

(d)  to compute the amount of benefits which shall be payable to any Participant (or beneficiary) in accordance with the provisions of the Plan, and to determine the person or persons to whom such benefits shall be paid;

(e)  to authorize the payment of benefits;

(f)  to appoint, change or terminate actuaries, accountants, investment managers, trustees, attorneys, Claim Administrators and other experts, and to delegate responsibility to these experts whenever necessary to enable the Company to carry out its obligations under the Plan;

(g)  to determine a funding policy for the Plan; and

(h)  to authorize the payment from the Trust the expenses of administering the Plan and the Trust.

Any or all of these powers may be delegated by the Administrative Committee as Plan Administrator in accordance with Section 6.3.

6.3    Delegation of Administrative Powers

The Administrative Committee as Plan Administrator may delegate any of his
duties and powers to one or more persons, by an action in writing.

The Administrative Committee as Plan Administrator may revoke any such
delegation at any time by advising the affected party in writing that
delegation of any or all responsibility will be terminated.  Revocation shall
become effective on or after receipt of written notice by the affected party.
Any party who has accepted the delegation of any or all of the
responsibilities designated under this section above may at any time advise
the Plan Administrator in writing that it wishes to terminate such acceptance.
Termination shall become effective on or after receipt of written notice by the
Plan Administrator.

6.4    Indemnification

To the extent permitted by law, the Company shall, and hereby does,
indemnify and hold harmless the members of the Board of Directors, the
Directors Committee, the Administrative Committee as Plan Administrator,
and any other employees who may be deemed to be fiduciaries of the Plan,
from and against any and all losses, claims, damages or liabilities (including
attorney's fees and amounts paid in settlement of any claim) arising out of or
resulting from the implementation of a duty, act or decision with respect to
the Plan, so long as such duty, act or decision does not involve gross
negligence or willful misconduct on the part of any such individual.  Any
individual person so indemnified shall, within 60 days after receipt of notice
of any action, suit or proceeding, notify the Company and offer in writing to
the Company the opportunity at its own expense, to handle and defend such

action, suit or proceeding, and the Company shall have the right, but not the obligation, to conduct the defense in any such action, suit or proceeding. Failure to give the Company such notice shall relieve the Company of any liability under this Section 6.4.    The Company may satisfy its obligations under this provision (in whole or in part) by the purchase of a policy or policies of insurance.

ARTICLE VII

PLAN FINANCING

7.1    Company Contributions

Subject to the provisions of Article VIII, the Company shall contribute such amounts as the Company may from time to time determine to be the liability required to provide benefits for Participants of the Plan.

7.2    Trust

The Company has established a Voluntary Employee Beneficiary Association (VEBA) Trust under Code Section 501 (c)(9) (Tax-Exempt Trust) for the purpose of holding the Company contributions in trust for the payments of Plan benefits and expenses. Such Plan benefits and expenses shall be paid from the Long Term Disability subaccount of the Trust. Such Trust shall be held by a Trustee or Trustees under a Trust Agreement adopted by the Company.

7.3    Amendment of Trust Agreement

The Company may from time to time amend the adopted Trust Agreement, may remove the Trustee or Trustees, and, upon removal or resignation of the Trustee or Trustees, may appoint a successor Trustee or Trustees, through a Board of Directors meeting held in accordance with the established procedures of the Board, or as the Board delegates, through a Directors Committee meeting held in accordance with the established procedures of the committee.

7.4     Right to Insure

The Company reserves the right to insure this Plan in whole or in part by purchasing such contracts of insurance as it deems, in its absolute discretion, advisable.

## ARTICLE VIII

## AMENDMENT AND TERMINATION

8.1     Amendment

The Board of Directors, acting through the Directors Committee, may amend in writing any part or all of the Plan at any time or from time to time. Such amendment shall be enacted through a formally approved committee resolution at a regularly constituted meeting held in accordance with the established procedures of the Board and the Directors Committee.

8.2     Termination

The Plan may be terminated in its entirety or substituted for another at any time by action of the Board of Directors acting through the Directors Committee, on behalf of the Company. No termination or substitution shall operate to reduce the amount of any benefit payment otherwise payable under the Plan for a Benefit Payment Period that commenced before the effective date of such termination or substitution. Such termination or substitution shall be made effective through a formally approved committee resolution at a regularly constituted meeting held in accordance with the established procedures of the Board and the Directors Committee.

8.3     Applicable Law

The Board of Directors, acting through the Directors Committee, reserves the right to terminate or amend the Plan at any time if the Plan is deemed not to be in compliance with Applicable Law.

ARTICLE IX

GENERAL PROVISIONS

9.1    No Limitation of Management Rights

Participation in the Plan shall not lessen or otherwise affect the responsibility of an Employee to perform fully his duties in a satisfactory and workmanlike manner, nor shall it affect the Company's right to discipline, discharge, or take any other action with respect to an Employee.

9.2    Participant's Responsibilities

Each Participant shall be responsible for providing the Claim Administrator complete and accurate information, including but not limited to his current address. Any notices required or permitted to be given hereunder shall be deemed given if directed to such address and mailed by regular United States mail. Neither the Claim Administrator nor the Company shall have any obligation or duty to locate a Participant. In the event a Participant becomes entitled to a payment under the Plan and such payment cannot then be made (i) because the current address referred to above is incorrect, (ii) because such Participant fails to respond to the notice sent to the current address referred to above, (iii) because of conflicting claims to such payment, or (iv) because of any other reason, the amount of such payment, if and when made, shall be that determined under the provisions of Article III hereof without interest thereon.

9.3    Missing Persons

If, within one year after any amount becomes payable hereunder to a Participant, the same shall not have been claimed provided due and proper care shall have been exercised by the Claim Administrator in attempting to make such payment, the amount thereof shall be forfeited and shall cease to be a liability of the Plan.

9.4    Governing Law

The Plan shall be governed by and construed in accordance with Applicable Laws governing employee benefit plans and in accordance with the laws of the State of California where such laws are not in conflict with the aforementioned Federal Laws.

ARTICLE X

OFFICIAL DOCUMENT

This document constitutes the entire Plan, and it is the official Plan document which sets forth the terms and conditions of the plan. Any discrepancy between the terms, conditions or language contained in this Plan document and the terms, conditions or language of other documents including the summary plan description will be resolved in accordance with this Plan document. If there are differences in interpretations between this Plan document and other documents or materials purporting to described Plan benefits, the interpretation of this Plan document shall prevail.

## ADOPTION OF THE PLAN

As evidence of its adoption of the Union Bank of California Long Term Disability Benefit Plan, as amended and restated, effective January 1, 1997, Union Bank Of California has caused this instrument to be signed by its officers thereunder duly authorized and its corporate seal attached hereto this _29th_ day of _____, 1998.

By: _Paul Fearer    10/29/98_
    (Sign Name)           (Date)

For: UNION BANK OF CALIFORNIA, N.A.
    _Paul Fearer_
    _Director of Human Resources_
    (Print Name and Title)

ATTEST

By: _____
    (Sign Name)

    _Jean C. Nomura_
    (Print Name and Title) _Corporate Secretary_

AMENDMENT NUMBER ONE
TO THE UNION BANK OF CALIFORNIA
LONG-TERM DISABILITY PLAN

(as Amended and Restated Effective January 1, 1997)

The Union Bank of California Long-Term Disability Benefit Plan, as amended and restated effective January 1, 1997, is hereby amended effective January 1, 1999 as follows:

(1)    Section 1.20, definition of Monthly Earnings, shall be amended in its entirety to read as follows:

1.20    Monthly Earnings

(a)    The Participant's regular base salary or wages received for services rendered to the Company. "Monthly Earnings" also includes amounts deferred pursuant to Code Section 125, 401(k), 402(a)(8), 402(h) or 403(b) which if paid, would have been Monthly Earnings. Except as provided in subsection (b) below, the term "Monthly Earnings" excludes (without limitation) Monthly Commission Earnings, overtime pay, bonuses, premium payments, restricted stock awards, bargain element on stock options, special amounts or payments and indemnities.

(b)    With respect to Participants who are Commission Earnings Eligible Employees, the term "Monthly Earnings" includes Monthly Commission Earnings.

(c)    If all or part of a Participant's base pay is based on the number of hours worked, then the monthly rate of base pay will be based on the number of hours in the scheduled work week. But, no more than 40 hours of base pay can be included for each week.

(2)    New Sections 1.30 and 1.31, definition of "Monthly Commission Earnings" and "Commission Earnings Eligible Employee" shall be added to the end of Article I to read as follows:

1.30    Monthly Commission Earnings

(a)    For a Commission Earnings Eligible Employee with 18 months of continuous employment with the Company, Monthly Commission Earnings equal his or her average monthly commission earnings for the 18-month period preceding the Period of Disability.

9/15/98

(b) For a Commission Earnings Eligible Employee with less than 18 months of continuous employment with the Company:

(1) Monthly Commission Earnings equal his or her total commissions for the period of employment divided by the number of employment months.

1.31 Commission Earnings Eligible Employee

An Eligible Employee whose compensation is primarily commission-based and who is defined in Appendix A as Commission Earnings Eligible. Job codes or classes may be added to or deleted from Appendix A by Resolution of the Directors Executive Compensation and Benefits Committee.

WITNESS THE EXECUTION of this Amendment Number One, effective January 1, 1999, to the Union Bank of California Long-Term Disability Plan (as amended and restated effective January 1, 1997) by a duly authorized officer of Union Bank of California on this __16th__ day of __October__, 199_8_.

For: UNION BANK OF CALIFORNIA

By: _Paul Fearer_

Title: _Director of Human Resources_

## APPENDIX A

### Commission Earnings Eligible Employees

Real Estate Loan Representative            Job Code     62000C

Investment Specialist                      Job Code     46147U

BOARD RESOLUTION
REGARDING
UNION BANK OF CALIFORNIA
LONG TERM DISABILITY PLAN


WHEREAS, Union Bank of California, National Association (the "Bank") has established and maintains the Union Bank of California Long Term Disability Plan (the "Plan"), as amended and restated on January 1, 1997; and

WHEREAS, the Bank has decided that it is in the best interests of the Plan and Plan participants to amend the claims procedures set forth in the Plan to comply with the requirements of the Health Insurance Portability and Accountability Act of 1996 (as amended) and to clarify the definition of "eligible employee" under the Plan.

NOW, THEREFORE BE IT RESOLVED, that Amendment Number Two to the Union Bank of California Long Term Disability Plan, as amended and restated, is adopted effective January 1, 2002, in the form submitted and that the appropriate officer of the Bank is hereby authorized and directed to execute the Amendment.

AMENDMENT NUMBER TWO
TO THE UNION BANK OF CALIFORNIA
LONG-TERM DISABILITY PLAN

(as Amended and Restated Effective January 1, 1997)

The Union Bank of California Long-Term Disability Benefit Plan, as amended and restated effective January 1, 1997, is hereby amended effective January 1, 2002 as follows:

(1)     Appendix A shall be replaced in its entirety with Appendix A substantially in the form attached hereto.

(2)     Article I, "Definitions," shall be amended by adding the following new definitions as Section 1.3(a) and Section 1.22(a), accordingly, and renumbering the subsequent Sections thereafter.

"1.3(a)    Appeal Administrator

The insurance company, service company or other entity, which regularly engages in the business of providing claims appeals administration to employee welfare benefit plans, to which the Committee has delegated such services. The Appeal Administrator may be affiliated with the Claim Administrator, provided, however, that no individual involved in the initial benefit determination by the Claim Administrator, nor any subordinate of such individual, shall act on an appeal of such determination upon review by the Appeal Administrator.

1.22(a)    Payroll

The system used by the Company to pay those individuals it regards as common law employees and to withhold employment taxes from the compensation it pays to such individuals. 'Payroll' does not include any system the Company uses to pay individuals whom it does not regard as its common law employees and for whom it does not actually withhold employment taxes (including, but not limited to, individuals it regards as independent contractors) for their services."

(3)     Article II, Section 2.1, "Eligibility", shall be amended in its entirety to read as follows:

"An Eligible Employee is a person who, on or after the effective date of the Plan,

    (a)    is a common law employee of the Company;
    (b)    is on the U.S. Payroll of the Company;
    (c)    is regularly scheduled to work at least 17-1/2 hours weekly;
    (d)    is not a flexible non-benefits eligible employee, regardless of the number of hours worked per week; and
    (e)    is not on a short term or temporary assignment.

If, during any period, the Company has not regarded an individual as a common law employee and, for that reason, has not withheld employment taxes with respect to that individual, then that individual shall not be an Eligible Employee for that period, even in

the event that the individual is determined, retroactively, to have been a common law employee during all or any portion of that period.

An individual's status as an Eligible Employee shall be determined by the Company in its sole discretion and such determination shall be conclusive and binding on all persons."

(4)     Article V, "Claims and Review Procedures," shall be amended in its entirety to read as follows:

"5.1    Claims Procedure

A Claim Administrator shall be appointed by the Company to administer the claims under the Plan. The Claim Administrator shall be solely responsible for the matters for which it is responsible under an administrative service contract, and to the extent required by ERISA, shall acknowledge in writing that it is a fiduciary with respect to the Plan.

(a)     Filing a Claim. A Participant who submits a claim for disability benefits shall submit such claim, in writing, to the Claim Administrator or to such other individuals as the Plan Administrator shall designate in writing. Such claims shall be submitted on the form or forms prescribed by the Claim Administrator. A properly completed claim shall include a statement from the attending physician and such other information or documentation as the Claim Administrator may reasonably request.

Written notice of claim must be given to the Claim Administrator within nine (9) months after the date of commencement of Total Disability. All proof of disability must be submitted within 120 days after the Benefit Waiting Period ends. Failure to furnish such proof within this time limit could result in a denial of benefits, in whole or in part, unless it was not reasonably possible for the Participant to comply. A claim may be submitted by a representative of the Participant if he is not reasonably able to do so. The Participant shall obtain a statement, in writing, from the attending physician for the illness or injury upon which the Participant's claim for disability benefits is based. Such statement may be submitted directly to the Claim Administrator or his designee by such physician, and shall be on the form or forms prescribed by the Claim Administrator.

(b)     Action on Claim Filed. Following receipt of a claim for disability benefits, the Claim Administrator shall, within 45 days after receipt of the claim, provide a written notice with respect to the disability benefits to which the

Participant is entitled, if any. The Claim Administrator may extend the period of time within which to render its decision for two 30-day periods, if necessary for reasons beyond the control of the Claim Administrator, provided the Claim Administrator notifies the Participant within the initial 45-day period or first 30-day extension period, as the case may be, of the reasons for the extension and the expected date of the decision by the Plan. The notice of extension shall specify (i) the standards on which entitlement to a benefit is based, (ii) the unresolved issues that prevent a decision on a claim, and (iii) any additional information needed to resolve such issues. The claimant shall be given no less than 45 days within which to provide the additional information.

The time period within which a benefit determination is required to be made shall begin at the time a claim is filed in accordance with these procedures, without regard to whether all the information necessary to make a benefit determination accompanies the filing. In the event that the time within which a benefit determination is required to be made is extended due to the failure of the claimant to submit information necessary to decide a claim, the period for making the benefit determination shall be suspended from the date on which the Claim Administrator sends the notice of extension to the claimant until the date on which the claimant responds to the request for additional information.

(c)     Notice of Determination of Claim. If the Claim Administrator determines that the Participant is entitled to disability benefits, the Claim Administrator's written notice to the Participant shall set forth the amount of the disability benefits to which the Participant is entitled and the method by which the Claim Administrator computed the amount of such benefits.

In the event the Claim Administrator determines that the Participant is not entitled to disability benefits, such written notice shall set forth the specific reasons for such determination; specific provisions of the Plan upon which the denial is based; and, any additional material or information reasonably necessary for the claimant to complete the claim and a statement of the reason such information is needed. Such notice shall also set forth the claim review procedure described in Section 5.2 and the time limits applicable to such procedures, and shall include a statement of the claimant's right to bring a civil action under

Section 502(a) of ERISA following an adverse benefit determination or review under Section 5.2. If an internal rule, guideline or protocol was relied on in denying the claim, a copy of such internal rule, guideline or protocol, shall be provided for a statement that an internal rule, guideline or protocol was relied on and is available without charge upon request. If the denial is based on a medical judgment, the notice shall clearly explain the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances (or a statement that such explanation shall be provided without charge upon request).

(d)     Subsequent Medical Examinations.  The Claim Administrator shall have the right to (i) require supplemental forms from the physician or those authorized to certify disabilities as often as deemed necessary, and (ii) have any Participant examined while the Participant is claiming benefits under this Plan, unless otherwise prohibited under state or federal law. This may be done when and as often as may be reasonably required during the period payments may be due under this Plan. (See Section 4.2, "Medical Examinations."). Supplemental forms and/or extensions of disability must be filed within 45 days of the date requested. Failure to do so could result in denial of benefits.

5.2     Claims Review Procedure

In accordance with Section 6.3, the Plan Administrator shall delegate to the Appeal Administrator the authority to act with respect to any appeal from a denial of benefits under the Plan, as described in this Section 5.2, except for appeals regarding eligibility for participation in the Plan, which shall be heard by the Plan Administrator. The Appeal Administrator shall be the named fiduciary with respect to the responsibilities as described in this Section.

(e)     Right of Appeal. Any person whose application for benefits is denied (or is deemed denied) in whole or in part, or such person's duly authorized representative, may appeal such denial by submitting to the Appeal Administrator a written request for a review of the application within 180 days after receiving written notice of such denial. The Appeal Administrator shall give the applicant or such representative an opportunity to submit written comments, documents, records and other information relating to the claim; and, upon request, to review without charge all documents, records and other information relevant to the claim.

The Appeal Administrator shall take into account all comments, documents, records and other information submitted without regard to whether such information was submitted in the initial claim. If applicant requests medical records requiring explanation by the treating physician or health care professional, the applicant may be referred to such physician or health care professional prior to being provided the requested documents. Such a referral shall not, however, prevent the applicant's obtaining the records within a reasonable time and without charge.

The Appeal Administrator shall not afford deference to the initial claim denial. The request for review shall be acted on by an appropriate named fiduciary who is neither the individual who made the initial claim denial nor a subordinate of such individual. In reviewing a claim denial that was based in whole or in part on a medical judgment, the Appeal Administrator shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment and who was not involved in the initial claim denial. Medical or vocational experts whose advice was obtained in connection with the claim denial shall be identified, regardless of whether the advice was relied upon in making the determination.

(f) Request for Review. The request for review must be in writing and shall be addressed to the Appeal Administrator. The request for review shall set forth all of the grounds upon which it is based, all facts in support thereof and any other matters that the applicant deems pertinent. The Appeal Administrator may require the applicant to submit (at the expense of the applicant) such additional facts, documents or other material as it deems necessary or advisable in making its review. The applicant shall be given no less than 45 days within which to provide such additional information.

(g) Action on Request for Review. The Appeal Administrator shall act on a request for a review within 45 days after receipt thereof, unless special circumstances require an extension of time up to an additional 45 days for processing the request. If such an extension for review is required, a notice of the extension shall be furnished to the applicant within the initial 45-day period, which shall describe the circumstances requiring the extension and the date by which the Appeal Administrator will render a decision. The period of time within which an appeal is required to be decided shall begin at the time an appeal is filed in accordance with

Section 5.2(f), without regard to whether all the information needed to determine the benefit on review accompanies the filing. In the event that the time within which an appeal is required to be decided is extended due to the failure of the applicant to submit information necessary to decide an appeal, the period for deciding the appeal shall be suspended from the date on which the Appeal Administrator sends the notice of extension, to the applicant until the date on which the applicant responds to the request for additional information.

(h)     Notice of Determination on Review.  In the event that the Appeal Administrator confirms the denial of the application for benefit in whole or in part, such notice shall set forth, in a manner calculated to be understood by the applicant, the specific reasons for such denial; specific references to the Plan provisions on which the decision is based; a statement that the claimant is entitled to receive, upon request and without charge, copies of all documents, records and other information relevant to the claim for benefits.  Such notice shall state that the claimant has a right to bring an action under Section 502(a) of ERISA.  If an internal rule, guideline or protocol was relied on in making the determination, a copy of such internal rule, guideline or protocol shall be provided (or a statement that an internal rule, guideline or protocol was relied on and is available without charge upon request).  If the determination is based on a medical judgment, such notice shall clearly explain the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances (or a statement that such explanation shall be provided without charge upon request).  The notice shall include the following statement:  "You and your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

(i)     Appeal Administrator Rules and Procedures. The Appeal Administrator shall establish such rules and procedures, consistent with the Plan and ERISA, as it may deem necessary or appropriate in carrying out its responsibilities under this Section 5.2. The Appeal Administrator may require an applicant who wishes to submit additional information in connection with an appeal from the denial of benefits, in whole or in part, to do so at the applicant's own expense."

WITNESS THE EXECUTION of this Amendment Number Two, effective January 1, 2002, to the Union Bank of California Long-Term Disability Plan (as amended and restated effective January 1, 1997) by a duly authorized officer of Union Bank of California on this 4th day of December, 2002.

For: UNION BANK OF CALIFORNIA

By _____

Name: Paul Fearer

Title: Director of Human Resources

## APPENDIX A

## Commission Earnings Eligible Employees

| | |
|---|---|
| Mortgage Consultants | Job Code 62000C |
| Investment Specialist | Job Code 46147U |
| Producers | Job Code 730042 |